FILED

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2014 SEP 29  P 4: 33

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

DANIELLE EVANS )
3112 Dawson Lane, SW )
Atlanta, GA 30331 )
)
      Plaintiff, )
)
v. )  Civil Action No. 1:14CV1292 LMB/TRJ
)
LEIDOS HOLDINGS, INC. )
F/K/A SCIENCE APPLICATIONS )
INTERNATIONAL CORPORATION )
1710 SAIC Drive )
McLean, Virginia 22102 )
)
    Serve: )
    CT Corporation System )
    4701 Cox Road )
    Suite 285 )
    Glen Allen, Virginia 23060 )
)
      Defendant. )
)

## COMPLAINT AND JURY DEMAND

### Preliminary Statement

1. This is a civil action against defendant Leidos Holdings, Inc., f/k/a Science Applications International Corporation ("Leidos") for monetary relief for injuries plaintiff Danielle Evans sustained as a result of defendant subjecting her to a hostile work environment, discriminating against her on the basis of her sex (female), and retaliating against her for opposing her supervisor's harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

## Jurisdiction and Venue

2. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

3. Venue is proper in the district under 42 U.S.C. § 2002e-5(f)(3), because the Eastern District of Virginia is the judicial district in which the employment records relevant to defendant's unlawful employment practice are maintained and administered, and is the judicial district where defendant has its principal office.

## Parties

4. Plaintiff Danielle Evans is a citizen of the United States and of the State of Georgia who resides at 3112 Dawson Lane SW, Atlanta, Georgia, 30331. During all relevant times, Ms. Evans was jointly employed by both Jacobs Technology and Science Applications International Corporation.

5. Defendant Leidos Holdings, Inc. is a Delaware corporation with its corporate headquarters located at 1710 SAIC Drive, McLean, Virginia, 22102. Defendant's registered agent in the Commonwealth of Virginia is CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, Virginia 23060.

## Factual Allegations

6. In January 2009, Ms. Evans began working in Balad, Iraq for Jacobs Technology, one of several federal contracting companies working overseas, on the Mine Resistant Ambush Protected ("MRAP") contract.

7. Leidos was the government's prime contractor for the MRAP contract, and was Ms. Evans' joint employer.

8. Ms. Evans' direct supervisor in Iraq was Leidos' Joint Logistics Integrator Robert Vasquez. Ms. Evans and Mr. Vasquez shared office space and worked at adjacent desks. Mr.

Vasquez maintained day-to-day supervision and control over Ms. Evans' work, and assigned her tasks to perform. Mr. Vasquez exercised control over the equipment Ms. Evans used to perform her job, including the computer she was issued to perform her daily tasks. Mr. Vasquez also controlled Ms. Evans' ability to take medical leave, and refused to approve her request to travel to Kuwait for dental work.

9. Shortly after she began working in Iraq, Mr. Vasquez began making unwanted sexual advances towards Ms. Evans. He repeatedly commented on her appearance—i.e., that he liked her clothing, how she wore her hair, or her appearance in general. Mr. Vasquez offered to fly Ms. Evans out to his home in California on numerous occasions, and each time, Ms. Evans refused. Mr. Vasquez offered to buy Ms. Evans gifts, which she refused. Mr. Vasquez repeatedly asked Ms. Evans to have dinner with him and to go to the movies. Ms. Evans refused his unwelcome invitations every time. Mr. Vasquez also told Ms. Evans stories about his personal life, including about the younger women he dated.

10. In the Spring of 2009, Mr. Vasquez cornered Ms. Evans in her office, put his arms around her, and attempted to kiss her. Ms. Evans pushed him away. Mr. Vasquez attempted to justify his actions by claiming that it was typical in "Latino culture" to show physical affection.

11. On June 19, 2009, just weeks after his unwelcomed attempt to kiss Ms. Evans, Mr. Vasquez confessed his attraction to Ms. Evans in an email, which stated, in part, "Please don't be alarmed and I hope you hear me as a man and not your Supervisor… I just have to say what I need to say and get it out of my heart…Sometimes it's scary and I find myself looking at you in amazement at the things you say, how you say it, the things you do, and how you do them…[I]n what has been an unexpected moment in my life, I have been touched by someone special and in this case, but your smile that lingers in my mind and heart…" He signed the letter

"143IHNDTILY," and included his phone number and private email address "just in case."

12. Ms. Evans understood "143" to mean "I love you," and understood "IHNDTILY" to mean "I have no doubt that I love you." Mr. Vasquez's unwelcomed advances made Ms. Evans feel uncomfortable.

13. Over the ensuing months, Mr. Vasquez's conduct toward Ms. Evans turned hostile and abusive. He shouted loudly at Ms. Evans, spread rumors that she was a lesbian, and falsely criticized her job performance to her colleagues, telling one, falsely, that Ms. Evans was "incompetent" and an "overpaid clerk."

14. In November 2009, Ms. Evans complained to Mr. Vasquez via email about the "hostile work environment" he created. Mr. Vasquez did not stop harassing Ms. Evans. To the contrary, throughout all of 2010, he continued to make inappropriate comments about Ms. Evans' physical appearance, including comments about how well her jeans fit her body, how "sexy" she smelled, and how her body had a "perfect shape."

15. During the fall of 2010, Mr. Vasquez, in his conversations with the MRAP project's government lead, began to criticize falsely Ms. Evans' job performance. Mr. Vasquez also informed the government lead, falsely, that Ms. Evans had taken more than her allotted 90 days of vacation leave during FY 2010. Because of Mr. Vasquez's false statement, the government lead denied Ms. Evans request for vacation leave in January 2011.

16. In January 2011, the government lead notified Ms. Evans that he was eliminating her position because of the "animosity" that existed between Mr. Vasquez and Ms. Evans. The government lead took this action as a direct result of Mr. Vasquez's unfounded criticism of Ms. Evans.

17. Because of Mr. Vasquez's actions, Ms. Evans lost over one month's income, or

approximately $22,350, including base pay and pay differentials.

18. Ms. Evans suffered significant physical and emotional distress as a result of Mr. Vasquez's harassment. She suffered from sleep loss, weight loss, anxiety, and migraines throughout 2009 and 2010, and withdrew socially from friends and colleagues as Mr. Vasquez's continuing harassment left her increasingly depressed and hopeless.

19. In February 2011, Jacobs Technology reassigned Ms. Evans to a position in Afghanistan, where she thought she would no longer be subject to Mr. Vasquez's repeated harassment. However, on May 11, 2011, Mr. Vasquez wrote an email to Ms. Evans' direct supervisor Mark Moore, and two other colleagues, in which he referred to Ms. Evans as a "carpet commando." "Carpet commando" is a pejorative term for a gay woman.

20. Ms. Evans timely filed her charge with the Fairfax County Human Rights Commission on August 26, 2011.

21. Ms. Evans timely filed an amended charge with the EEOC on February 2, 2012.

22. Ms. Evans received the EEOC's Dismissal and Notice of Suit Rights on July 2, 2014.

### COUNT I – HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq.*

23. Plaintiff incorporates as though restated each of the allegations set forth in the paragraphs above, and further states as follows.

24. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1), forbids an employer from discriminating against an employee on the basis of sex.

25. Defendant Leidos was Ms. Evans' joint employer within the meaning of 42 U.S.C. § 2000e(b).

26. At all relevant times, defendant had total control over the means and manner of

Ms. Evans' work, schedule, duties, equipment, and office.

27. Defendant discriminated against Ms. Evans on the basis of her sex (female).

28. Defendant did not subject similarly situated male employees to similar unwanted harassment and abuse.

29. Throughout plaintiff's employment with defendant, defendant subjected her to discriminatory treatment on the basis of her sex. Defendant discriminated against plaintiff on the basis of her sex by, inter alia, subjecting her to a sexually hostile work environment.

30. Defendant further discriminated against Ms. Evans by providing false information to the government lead, causing him to eliminate Ms. Evans' position in January 2011.

31. On May 11, 2011, defendant, through Mr. Vasquez, further discriminated against Ms. Evans by calling her a "carpet commando"—a pejorative term for a gay woman—in an email to Ms. Evans' direct supervisor.

32. Defendant engaged in its discriminatory actions intentionally, willfully, maliciously, with reckless indifference to Ms. Evans' federally protected rights, and with intent to harm Ms. Evans.

33. Defendant's actions described above constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

34. Defendant's actions described above directly and proximately have caused, and continue to cause, plaintiff to suffer severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, damage to her reputation, and loss of past and future income and benefits.

### COUNT II – RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq.*

35. Plaintiff incorporates as though restated each of the allegations set forth in the

paragraphs above, and further states as follows.

36. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1), forbids an employer from retaliating against an employee who engages in protected activity.

37. Defendant Leidos was Ms. Evans' joint employer within the meaning of 42 U.S.C. § 2000e(b).

38. At all relevant times, defendant had total control over the means and manner of Ms. Evans' work, schedule, duties, equipment, and office.

39. Ms. Evans engaged in protected activity when she opposed Mr. Vasquez's inappropriate and unwelcomed sexual advances, and when she complained in writing to Mr. Vasquez about the hostile work environment he created.

40. Defendant, through Mr. Vasquez, retaliated against Ms. Evans for engaging in protected activity by criticizing falsely Ms. Evans' job performance to the MRAP project's government lead, thereby inducing the government lead to eliminate Ms. Evans' position.

41. The government lead would not have eliminated Ms. Evans' position, but for the illegal retaliation by defendant.

42. Defendant engaged in its retaliatory actions intentionally, willfully, maliciously, with reckless indifference to Ms. Evans' federally protected rights, and with intent to harm Ms. Evans.

43. Defendant's actions described above constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

## Requested Relief

NOW, WHEREFORE, plaintiff prays this court for the following relief:

1. An award to plaintiff of compensatory damages, including backpay, front pay, and emotional distress damages in an amount appropriate to the proof presented at trial;

2. An award to plaintiff of punitive damages in an amount appropriate to the proof presented at trial;

3. An award to plaintiff of reasonable attorneys' fees and costs; and

4. All other relief the court deems just.

Respectfully submitted,

/s/ Peter M. Whelan
Peter M. Whelan
Virginia Bar # 76224
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
(202) 745-1942 (Tel)
(202) 745-2627 (Fax)
whelan@bernabeipllc.com
Attorney for Plaintiff Danielle Evans

David Wachtel, Esquire
Not Admitted in Virginia
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
(202) 745-1942 (Tel)
(202) 745-2627 (Fax)
wachtel@bernabeipllc.com

Attorneys for Plaintiff Danielle Evans

DATED: September 29, 2014